UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RENEE TERESA GOELLNER-GRANT, ) <br> KYLE D. GRANT, and ALEXANDER ) <br> GOELLNER ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PLATINUM EQUITY LLC, ) <br> BLUELINE RENTAL LLC, ) <br> UNITED RENTALS, INC., and ) <br> UNTED RENTALS ) <br> (NORTH AMERICA), INC., ) <br> ) <br> Defendants. ) | Case No. 4:18-cv-00836-SNLJ |

## MEMORANDUM AND ORDER

Before this Court is defendant Platinum Equity, LLC's ("Platinum") motion to dismiss (#13) and memorandum in support (#14) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Plaintiffs have filed a memorandum in opposition (#20), and Platinum has filed a reply in support. (#24). Finding personal jurisdiction is lacking over Platinum, which cannot be remedied by jurisdictional discovery, this Court will dismiss Platinum from this case.

**I. BACKGROUND**

This case, originally brought in St. Louis County Circuit Court, was removed to this Court on June 4, 2018, under diversity jurisdiction, 28 U.S.C. § 1332(a). Platinum filed a Motion to Dismiss on June 11, 2018, asserting this Court lacks personal jurisdiction—in particular, specific personal jurisdiction—over it. Plaintiffs disagree,

1

arguing an underlying parent-subsidiary relationship causes Platinum to be subject to this Court's jurisdiction.

The backbone of this lawsuit, resting principally on allegations that a defective boom lift caused the death of decedent Randall Lee Grant ("Decedent"), lies in the realm of product liability and negligence that occurred in Missouri. But, it is the relationship between the movant, Platinum, and fellow defendant BlueLine Rental, LLC. ("BlueLine") that precipitates the present jurisdictional dispute. Platinum is a Delaware-based limited liability company with its principle place of business in California. (#5, p. 2). Platinum is a private equity investment firm that plaintiffs highlight "specializ[es] in the merger, acquisition, *and operation of companies*" conducting business in a range of different product markets. (#20-7, p.2 (emphasis in original)). Platinum, itself, has no offices, property, or employees in Missouri, nor is it registered to do business in Missouri. (#14-1, p. 2). BlueLine is also a Delaware-based limited liability company with its principle place of business in Texas; however, unlike Platinum, BlueLine—which operates more than 130 rental stores across North America—has a notable sales presence in Missouri, which plaintiffs assert includes at least three sales locations renting out lifts like the one that allegedly caused Decedent's death. (#20-5; #20, p. 7).

As mentioned, the present jurisdictional dispute revolves around the unique relationship between Platinum and BlueLine—Platinum is the parent company of BlueLine, one of Platinum's many subsidiaries. The history of their relationship, and how the lift involved in Decedent's death is entangled in that relationship, is briefly set forth:

The lift, a JLG Aerial Boom Lift, Model No. E450AJ, was first designed, manufactured, assembled, marketed, and sold by JLG Industries, Inc. ("JLG") to Midwest Aerials & Equipment, Inc. ("Midwest Aerials") on or about April 23, 2002, in Kansas City, Kansas. (#5, p. 4; #20, p. 2).[1] On or about August 30, 2010, Midwest Aerials sold the lift to non-party CBL & Associates Properties ("CBL") located in Missouri. (#20, p. 2; #20-2). Sometime in late 2011 (or early 2012)[2] Midwest Aerials was acquired by Volvo Construction Equipment Rents, Inc. ("Volvo Rents"). (#20, p. 2; #20-3). On or about February 3, 2014, Platinum acquired Volvo Rents and later changed its name to BlueLine Rentals, LLC., the defendant here. (#20, p. 2, 6-7; #20-4; #20-5). And, finally, on April 30, 2015, the lift (apparently rented to Decedent's employer at some point by CBL)[3] allegedly caused the death of Decedent after he became trapped between the lift's control panel and a metal cross-bar protruding from the ceiling of a garage he was working in. (#5, p. 4).

---

[1] In a separately-filed case, *Goellner-Grant et al. v. JLG Industries, Inc. et al.,* Case No. 4:18-cv-342-SNLJ, this Court dismissed JLG from a lawsuit filed by the same three plaintiffs involved in this case. On June 19, 2018, this Court found it lacked personal jurisdiction over JLG in light of the parties' agreement that "the lift in question was actually sold [by JLG] to a company in Kansas," whereby that company (Midwest Aerials) then sold it to a Missouri company. Based on this fact, this Court held that it lacked specific jurisdiction over JLG because "JLG's involvement ended in Kansas, and a third party went on to sell the lift in Missouri." This Court noted that specific jurisdiction, unlike general jurisdiction, requires the relevant contact (under the so-called "minimum contacts" test) to have a connection, in itself, with the events of the case. While plaintiffs tried to point to JLG's general distribution network in Missouri, this Court ultimately found that it was not this general, network-related contact that related to plaintiffs' claims. *See Goellner-Grant v. JLG Industries, Inc.,* 2018 WL 3036453 at *2-3 (E.D. Mo. June 19, 2018) (Limbaugh, J.).

[2] Plaintiffs are inconsistent on whether Volvo Rents was acquired in 2011 or 2012. (*Compare* #20, p.2; *with* #20, p. 6; *see also* #20-3, p.2). It appears from the attached exhibits that Volvo Rents may have, in fact, been acquired at the very end of 2011. In any event, this particular factual incongruency is immaterial to the Court's decision.

[3] Neither party specifically explains what became of the lift after it was sold to CBL, a Missouri company, in 2010. In fact, between the First Amended Petition, the Memorandum in Support, the Memorandum in Opposition, and the Reply in Support, only one mention of "CBL" appears: plaintiffs' brief acknowledgment that the lift was sold to CBL by Midwest Aerials. (#20, p. 2; #20-2).

From these facts, the parties' dispute becomes clear. Plaintiffs, seeking jurisdiction, argue that Platinum, the parent, was in full control and dominion over BlueLine, its subsidiary, so as to result in Platinum being the mere alter-ego of BlueLine—a theory that, if sustained, causes Platinum to be subject to this Court's jurisdiction by way of the underlying parent-subsidiary relationship notwithstanding the lack of Platinum's own, direct contacts with Missouri. Platinum, seeking dismissal for lack of jurisdiction, sets forth two counterarguments: (a) it does not, in fact, dominate BlueLine's operations to such a degree that jurisdiction should reach it by way of the underlying parent-subsidiary relationship; and (b) in any event, it is impossible to find Platinum acted through its subsidiary, BlueLine, as to the sale of the particular lift in question into Missouri (the relevant contact for specific jurisdiction) because that sale occurred four years *before* Platinum acquired BlueLine.

## II. ANALYSIS

In a diversity action such as this one, the Court "may assume jurisdiction over the nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004).

To survive a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction; that is, the "plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008).

Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780 (2017). The exercise of general jurisdiction over a corporation may take place where "the corporation is fairly regarded as at home." *Id*. (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id*. Here, the parties appear to agree that because Platinum is a Delaware corporation with its principal place of business in California, it is "at home" in Delaware and California and, thus, subject to general jurisdiction there. Plaintiffs do not attempt to argue Platinum is subject to general jurisdiction in Missouri.

"Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.' " *Id*. (*quoting Daimler AG v. Bauman*, 134 S.Ct. 746,754 (2014)). "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). The Missouri Long-Arm Statute provides that jurisdiction extends to "any cause of action arising from" the "transaction of business within" or the "commission of a tortious act" within Missouri. MO. REV. STAT. § 506.500.1(1), (3). The Missouri legislature's objective in enacting the statute "was to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the

Constitution of the United States." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970). Thus, critical to the "analysis is whether the exercise of personal jurisdiction in this case comports with due process." *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000). The Constitution's Due Process Clause requires that there be "minimum contacts" between the nonresident defendant and the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945) (internal quotations omitted).

"The baseline for minimum contacts is some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Clune*, 233 F.3d at 542 (internal quotation omitted). Defendant's contact with Missouri must be such that it "should reasonable anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In this case, it is undisputed that Platinum's subsidiary, Blueline, has sufficient minimum contacts to subject it to specific personal jurisdiction in Missouri. The question, then, is whether Platinum is also subject to personal jurisdiction by virtue of the parent-subsidiary relationship.

### A. Platinum's Parent-Subsidiary Relationship With BlueLine Does Not Create Personal Jurisdiction Over Platinum.

The parties spend considerable time arguing the merits of *In Re Genetically Modified Rice Litigation*, 576 F.Supp.2d 1063 (E.D. Mo. 2008). In that case, it was held that a parent-subsidiary relationship, which the Court observed as being "beyond that of a

6

normal parent and subsidiary," was sufficiently "synergetic" that the parent—a German corporation—was fairly haled into Missouri despite having no particular contacts with Missouri of its own. *Id*. at 1071. The Court expressly relied on a Ninth Circuit opinion, *Doe v. Unocal Corp*., 248 F.3d 915 (9th Cir. 2001), to conclude that a parent company may be subject to the jurisdiction of its subsidiary where the two are so unified that they, in essence, become alter-egos or agents of each other. *Id*. at 1072-1075 (finding "the Ninth Circuit's decision in [*Unocal* to be] particularly instructive"). Specifically, the court held:

> "Here … the two corporate defendants Bayer AG and Bayer CropScience AG have a close, synergetic relationship. The corporate parent serves to provide guidance and set policy. The subsidiary's purpose is to carry out the directives of the parent and fulfill its obligations with the Bayer enterprise. Without the existence of one, the other lacks a key aspect of its essential make-up. Bayer benefits from marketing itself as a single, unified enterprise. As such, CropScience AG acts as a 'mere instrumentality or adjunct' of the larger corporate parent."

*Id.* at 1075. Under the *Unocal* test, personal jurisdiction exists over a parent company if the subsidiary's services were "sufficiently important to the foreign [parent] corporation that if it did not have a [subsidiary] to perform them, the [parent]'s own officials would undertake to perform substantially similar services." *Unocal*, 248 F.3d at 928. Unsurprisingly, plaintiffs argue *In Re Genetically Modified Rice Litigation* requires this Court to hold that BlueLine is the mere alter-ego of Platinum for jurisdictional purposes because Platinum enjoys some modicum of control over BlueLine, "substantially benefit[s]" from its ownership of BlueLine, and ultimately has a "symbiotic relationship" with BlueLine. (#20, p. 5).

7

This Court disagrees. The continued validity of *In Re Genetically Modified Rice Litigation* is questionable. Six years after the opinion in that case, the U.S. Supreme Court decided *Daimler AG v. Bauman*, 571 U.S. 117 (2014), expressly rejecting the Ninth Circuit's *Unocal* test as nearly always yielding a "pro-jurisdiction answer":

> "The Ninth Circuit's agency finding rested primarily on its observation that MBUSA's services were important to Daimler, as gauged by Daimler's hypothetical readiness to perform those services itself if MBUSA did not exist. Formulated this way, the inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer: anything a corporation does through an independent contractor, subsidiary, or distributor is presumable something that the corporation would do by other means if the independent contractor, subsidiary, or distributor did not exist. The Ninth Circuit's agency theory thus appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the sprawling view of general jurisdiction we rejected in *Goodyear*."

*Id.* at 135-136 (internal quotations and citations omitted). Thus, to the extent the *In Re Genetically Modified Rice Litigation* opinion focuses on the mere advantageous synergy between parent and subsidiary for purposes of finding jurisdiction as espoused in *Unocal*, it cannot be said to comport with *Daimler*.

There is one wrinkle in that conclusion: *Daimler* was a case involving general jurisdiction, whereas *In Re Genetically Modified Rice Litigation* was a case applying specific jurisdiction. *Compare Daimler*, 571 U.S. at 135; *with In Re Genetically Modified Rice Litigation*, 576 F.Supp.2d at 1071. And, indeed, the Supreme Court noted in *Daimler* that "agency relationships"—the basis of *Unocal*—"may be relevant to the existence of *specific jurisdiction*." *Daimler*, 571 U.S. at 135 n. 13 (emphasis in original). However, the Ninth Circuit has itself strongly questioned whether its *Unocal* test can

8

survive even in the context of specific jurisdiction; in fact, the Ninth Circuit appears to have outright abandoned the *Unocal* test altogether. In *Williams v. Yamaha Motor Co., Ltd.,* 851 F.3d 1015 (9th Cir. 2017) the Ninth Circuit declared:

> "[*Daimler's*] criticism applies no less in the context of specific jurisdiction than in that of general jurisdiction. Accordingly, *Daimler's* reasoning is clearly irreconcilable with the agency test set forth in *Unocal*. The *Daimler* Court's express recognition of the potential viability of agency relationships for establishing specific jurisdiction does not alter our holding."

*Id*. at 1024 (citations omitted).

Even though the *Genetically Modified Rice Litigation* decision has eroded under *Daimler* and the subsequent abandonment of *Unocal*, it does appear to remain good law for the proposition that, within the framework of specific jurisdiction, there are two independent methods of reaching a parent company through a subsidiary: (a) alter-ego liability; and (b) agency liability. *See* 576 F.Supp.2d at 1073. For example, the Eighth Circuit has at times focused on both the *authorizing* aspect of agency liability and the *domination and control* aspect of alter-ego liability when considering whether an exercise of personal jurisdiction is proper as a whole. *See, e.g., Romak USA, Inc. v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004) (in considering the jurisdictional contacts of an agent with a particular state, so as to be imputed to the principal, the court looked at the scope of authority attributable to the agent); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 596 (8th Cir. 2011) (considering plaintiff's "agency theory," which was more properly grounded in an alter-ego theory, and noting that the key aspect of finding an alter ego is whether the parent both "controlled" and "dominated" the

9

affairs of the subsidiary). All that said, plaintiffs here focus entirely on an alter-ego theory rather than an agency theory.[4]

Alter-ego liability looks at the totality of the parent company's relationship with the subsidiary asking whether the relationship is so "completely dominated" by the parent company that it is proper to fully "disregard the corporate form of the subsidiary" altogether. *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 377-380 (Mo. App. E.D. 2014). "Courts hold parent companies liable because of their *total control* and their *improper use* of the subsidiary," and it is these aspects which cause "all activities—and all liabilities—of the subsidiary [to] become those of the parent" *Id*. (emphasis added)). In such instances, the subsidiary is simply a shell designed to artificially distance the parent company from what are, in reality, its own acts. *Id*. However, because of its jurisdictional consequence, an alter-ego relationship should be found sparingly and the "parent-subsidiary separation should be ignored with caution and only when the circumstances clearly justify it." *Id*. at 376. Indeed, it has been said that the alter-ego doctrine is an "extraordinary measure" reserved for "exceptional circumstances." *HOK Sport, Inc. FC Des Moines, L.C.,* 495 F.3d 927, 935 (8th Cir. 2007).

To establish alter-ego liability in this case, plaintiffs primarily focus upon the business synergy between Platinum and BlueLine, stating "Platinum Equity has no problem aligning itself and sharing in BlueLine Rental's success and business

---

[4] In identifying the key legal differences between agency and alter-ego theories of liability under Missouri law, the Court commends the opinion in *Blanks v. Fluor Corp*., 450 S.W.3d 308, 375-383 (Mo. App. E.D. 2014). *Blanks* noted a nationwide lack of clarity regarding the mixed terminology used by courts in considering agency and alter-ego liability and endeavored to dispel this lack of clarity by thoroughly explaining the legal parameters of both theories.

achievements because these successes work to further Platinum Equity's overall enterprise." (#20, p. 10). But, this is essentially an application of the Ninth Circuit's *Unocal* test, which, as mentioned, was recently abandoned as unsalvageable under *Daimler*. For purposes of determining alter-ego liability, it does not matter that a parent company shares in the business success and achievements of its subsidiaries. That was the conclusion clearly reached in *Daimler* as to general jurisdiction, which prompted *Williams* to question *Unocal*'s continued application even in the context of specific jurisdiction. Rather, as explained, the question to be answered for alter-ego liability is whether Platinum so totally and manifestly *dominated* and *controlled* BlueLine that it is reasonable to disregard BlueLine's corporate form and hold Platinum directly liable as if it had acted on its own. *See Blanks*, 450 S.W.3d at 377, 379-380.

In this view, plaintiffs argue Platinum and BlueLine are one-and-the-same because Platinum assisted in a "rebranding initiative" by which Volvo Rents became BlueLine. (#20, p. 7). They point to the fact that Platinum "shaped" and "maintained" BlueLine's customer base, and urge that this Court take note of the "long-term operational stewardship" and "safety stewardship" that Platinum has had over BlueLine. (#20, p. 7). While admitting Platinum never directly sold lifts in Missouri, they point to the fact that Platinum "marketed and reaped the benefit of BlueLine's presence and sales in Missouri." (#20, p. 9). And they conclude BlueLine must be a mere "instrument" of Platinum—another way of saying Platinum and BlueLine are one-and-the-same— because Platinum's "investment portfolio is expanded through its relationship with BlueLine." (#20, p. 10). Plaintiffs grasp at straws. None of these allegations (many of

11

which are loosely supported through links to press release articles) are of the quality or quantity to find that Platinum, in fact, dominates BlueLine. Courts at both the federal and state level have rejected many of plaintiffs' assertions outright. *See, e.g., In Re Enterprises Rent-a-Car Wage & Hour Employment Practices Lit.*, 735 F.Supp.2d 277, 323 (W.D. Pa. 2010) (use of integrated sales system, integrated IT and HR departments, common marketing images, and joint use of trademarked logos fail to establish an alter-ego where none of these things demonstrate high-level operational control over a subsidiary); *Bates v. Bankers Life and Cas. Co.*, 993 F.Supp.2d 1318, 1335-1336 (D. Or. 2014) (oversight of marketing activities alone cannot establish specific jurisdiction); *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) (though parent company controlled subsidiary's budget, established human resource policies, and had approval authority for large purchases, it was not the alter-ego where subsidiary fulfilled its own orders using its own inventory, negotiated its own contracts, and handled its own day-to-day operations); *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. 2013) (refusing to pierce the corporate veil on allegations that the parent company was responsible for maintaining the privacy of patients utilizing a subsidiary's services, or that subsidiary used forms and certain employees of parent company, since none of these things demonstrate that subsidiary was unable to act independently). And as for the remaining assertions, such as the fact that Platinum temporarily assisted in rebranding BlueLine after it was purchased, plaintiffs point to no law—and this Court can find none—to suggest this conduct permits the utilization of the alter-ego doctrine, which is an extraordinary remedy under Missouri law. *Blanks*, 450 S.W.3d at 376. Simply put, plaintiffs, at best, point to various

allegations of Platinum's macro-management of BlueLine; but, macro-management is not a sufficient basis in itself for finding Platinum controlled and dominated BlueLine to such a degree that corporate formalities should be disregarded. *See Ranza*, 793 F.3d at 1074 ("a parent corporation may be directly involved in financing and macro-management of its subsidiaries without exposing itself to a charge that each subsidiary is merely its alter ego").

### B. Jurisdictional Discovery Would Not Change the Result of the Court's Decision and So It Will Be Denied

Finally, the Court denies plaintiffs' request for jurisdictional discovery. (#20, p. 11). There is no requirement that jurisdictional discovery be permitted where a plaintiff merely suspects supportive facts might be revealed. *Viasystems, Inc.*, 646 F.3d at 598. Indeed, "when a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Id.*; *see also Shine Bros. Corp. v. Am. Intern. Group, Inc*., 108 F.Supp.3d 651, 679 (N.D. Iowa 2015) (commenting that "the discovery process established by the Federal rules is not intended to establish jurisdiction"). Here, the only potential argument remaining is that plaintiffs have not yet been able to discover the extent to which Platinum controls and dominates the day-to-day affairs of BlueLine for purposes of establishing jurisdiction under alter-ego liability. That said, the Court notes that Platinum has stated, by way of affidavit, that it is not involved in the day-to-day business affairs of BlueLine. (#14-1, p. 1). And nothing plaintiffs have presented to this Court sufficiently counter Platinum's affidavit—being mostly press releases with broad, tangential statements about Platinum

"owning and operating" rental businesses generally. (#20-3, #20-4, #20-5, #20-7, #20-8). To the extent plaintiffs grasp to the word "operating" found in some of the press release materials, it is again noted that macro-management by a parent company over its subsidiary is insufficient to establish alter-ego liability. *See*, e.g., *Ranza*, 793 F.3d at 1074. Plaintiffs' claims of an alter-ego relationship between Platinum and BlueLine sound in pure speculation. This Court is satisfied upon the pleadings, affidavits, and exhibits that Platinum is not, in fact, the alter ego of BlueLine; rather, at most, Platinum had some macro-management control over BlueLine, which cannot support personal jurisdiction here. *See Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 820 (8th Cir. 2014); *Epps v. Stewart Information Servs. Corp.*, 327 F.3d 642 (2003); *see also Fidelity Nat'l Information Servs., Inc. v. Plano Encryption Tech.*, LLC., 2016 WL 1650763 at *5 (D. Del. Apr. 25, 2016) (refusing plaintiff's request for jurisdictional discovery on an alter-ego theory, finding the request to be a mere "fishing expedition" because plaintiff put forward no competent evidence of the traditional hallmarks of an alter-ego relationship, such as the non-movant's capitalization, its solvency, whether it observed corporate formalities, whether it misused funds, or whether it in any other way operated as a façade).

### III. CONCLUSION

For the reasons set forth above, Platinum's Motion to Dismiss (#13) will be granted.

Accordingly,

14

**IT IS HEREBY ORDERED** that defendant Platinum Equity, LLC.'s motion to dismiss (#13) is **GRANTED**. Plaintiffs' claims are dismissed against Platinum Equity, LLC. without prejudice.

**IT IS FURTHER ORDERED** that plaintiffs' request for jurisdictional discovery is **DENIED**.

A separate Order of Dismissal will accompany this Memorandum and Order.

So ordered this 18th day of September 2018.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE