UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RENEE TERESA GOELLNER-GRANT, KYLE D. GRANT, and ALEXANDER GOELLNER<br><br>Plaintiffs,<br><br>v.<br><br>PLATINUM EQUITY LLC, BLUELINE RENTAL LLC, UNITED RENTALS, INC., and UNTED RENTALS (NORTH AMERICA), INC.,<br><br>Defendants. | Case No. 4:18-cv-00836-SNLJ |

## MEMORANDUM AND ORDER

Before this Court is defendant United Rentals (North America), Inc.'s motion for summary judgment (#28), which has been fully briefed. For the reasons explained below, this Court will **GRANT** the motion.

**I. BACKGROUND**

This is a wrongful death action in which the decedent, Randall Lee Grant, found himself trapped between the control panel of a JLG Industries, Inc. Ariel Boom Lift (Model No. E450AJ) and a "metal crossbar protruding from the ceiling of the [parking] garage" he was working on; at the time, he had been attempting to replace various light bulbs. The lift had purportedly trapped Decedent by remaining engaged in a forward motion after Decedent contacted the metal crossbar. In plaintiffs' words, Decedent "was crushed and died of compression asphyxia." They insist Decedent's death could have

1

been avoided if the lift had been equipped with a mechanism to automatically cut off power in such situations. Specifically, plaintiffs allege the lift should have been equipped with a JLG-made accessory called "SkyGuard," which is an "enhanced protection … auto reverse feature [that] activates" when an "operator [makes] contact with [an obstruction]." The parties do not mention when the SkyGuard technology was first made available, nor do plaintiffs explain, to the extent the lift in question is unreasonably dangerous, why SkyGuard technology is not a mandatory safety addition imposed by JLG on its lifts.

The lift in question was designed, manufactured, assembled, marketed, and sold by JLG on or about April 23, 2002, to a company in Kansas City, Kansas. JLG is not a party to this action.[1] The parties agree that United Rentals' involvement was limited to a series of repairs on the lift between 2014 and 2015. These repairs included replacing the drive contractor and drive motor, replacing a hose to fix a hydraulic leak, replacing rubber boots on a joystick, replacing jib hoses to fix a hydraulic leak, and replacing batteries.

It is plaintiffs' contention that, in repairing the lift, United Rentals breached a duty of care by "failing to equip the [lift] with safety features[] or provide adequate warning in

---

[1] In a separately-filed case, *Goellner-Grant et al. v. JLG Industries, Inc. et al.,* Case No. 4:18-cv-342-SNLJ, this Court dismissed JLG from a lawsuit filed by the same three plaintiffs involved here. The Court found it lacked personal jurisdiction over JLG in light of the parties' agreement that "the lift in question was actually sold [by JLG] to a company in Kansas," and that company, Midwest Aerials, then sold it to a Missouri company. Based on this fact, the Court held that it lacked specific jurisdiction over JLG because "JLG's involvement ended in Kansas, and a third party went on to sell the lift in Missouri." Though plaintiffs pointed to JLG's general distribution network in Missouri, the Court ultimately found these general, network-related contacts were not related to plaintiffs' claims. *See Goellner-Grant v. JLG Industries, Inc.,* 2018 WL 3036453 at *2-3 (E.D. Mo. June 19, 2018) (Limbaugh, J.).

connection with the very same components repaired." In essence, plaintiffs argue United Rentals was responsible for either equipping the lift with SkyGuard technology (or something similar) or else warning of the dangers associated with the lift's ability to trap someone against its control panel through the use of instructions or cautionary signage.

## II. STANDARD OF REVIEW

Summary Judgment involves the "threshold inquiry of determining whether there is a need for trial." *Walls v. Petrohawk Properties, LP*., 812 F.3d 621, 624 (8th Cir. 2015) (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986)). In other words, summary judgment is appropriately granted if, in viewing the record in a light most favorable to the nonmoving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating both the absence of a genuine issue of material fact and his or her entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the nonmoving party must then set forth, by affidavit or other rebuttal evidence, specific facts showing that a genuine issue of material fact actually exists. *Grey v. City of Oak Grove, Mo*., 396 F.3d 1031, 1034 (8th Cir. 2005); FED. R. CIV. P. 56(e). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007)

(*quoting Anderson*, 477 U.S. at 247-248). Thus, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion to dismiss." *Id*. Moreover, even when a dispute is genuine—such that a jury could reasonably favor either side—it must also be the case that the disputed facts are material in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

Plaintiffs' failure to warn claim is foreclosed by *Johnson v. Auto Handling Corporation*, 523 S.W.3d 452 (Mo. banc 2017). That case involved a similar claim brought against the repairer of a tractor trailer who did not warn the driver of the trailer about alleged defects in the design of the trailer. Plaintiff, as here, relied on Restatement (Second) of Torts, Section 388, and in particular, Comment C, which "extends 'supplier' liability to 'one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it.'" *Id*. at 461. In affirming a directed verdict for defendant and distinguishing Section 388, the court held

> The quoted language refers to knowledge of defects related to the work for which the defendant was employed. [Plaintiff] has failed to show a defect was introduced because of the work [defendant] was employed to do. By its terms section 388 does not impose liability on a repairer for "general dangers associated with a product unrelated to the specific repair work performed."

4

*Id.* (quoting *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1005 (8th Cir. 2006)). That is the case here. Plaintiffs attempt to impose liability on United Rentals not for the repairs it was engaged to perform—the installation of replacement parts to the specifications of the original design—but instead for failing to warn that the lift was unsafe, in its original design, because it lacked a specific safety feature involving modern technology.

Plaintiffs' claim for "negligent maintenance and inspection" fares no better. Plaintiffs maintain that Section 392(b) of the Restatement (Second) of Torts "imposes duties upon one who supplies chattels for a business purpose: (1) [the] duty to inspect for a defect, and (2) the duty to inform anyone expected to use it of defects found, if any." This provision, plaintiffs argue, required United Rentals to "discover the defective nature of the original"—and warn of this defect—"or repair [the] JLG Lift." As stated in plaintiffs' complaint, United Rentals had the duty "to equip [ ] the JLG lift with adequate or sufficient safety features, or to provide adequate warnings or instructions." In resolving this claim, however, it is enough to point out that, by its express language, Section 392(b) does not apply to the facts of this case. Section 392(b) states:

> One who supplies to another, directly or through a third person, a chattel ***to be used for the supplier's business purposes*** is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by person for whose use the chattel is supplied … if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

RESTATEMENT (SECOND) OF TORTS, § 392(b) (1965) (emphasis added). By its terms, Section 392(b) is limited to persons supplying chattels to others for use in the supplier's own business interests, as opposed to repair work done as a bailee for a bailor. Plaintiffs, here, say nothing about how the use of the lift was in aid of *United Rentals'* own business interests. Therefore, plaintiffs' duty-to-inspect claim under Section 392 fails.

To the extent plaintiffs' "maintenance and inspection" theory asserts, instead, a duty-to-retrofit claim, that claim also fails. As the Eighth Circuit put it in *Menz*, ""[u]nder Missouri law, even a manufacturer has no duty to offer to retrofit [a product] when such was not required at the time of manufacture. As a consequence, it is unreasonable to contend Missouri courts would impose such a duty upon a mere repair service provider." *Menz v. New Holland N. Am., Inc.*, 440 F.3d at 1005 (citing *Morrison v. Kuboto Tractor Corp.*, 891 S.W.2d 422, 429,430 (Mo.App. W.D. 1994)).

Finally, in a fallback position, plaintiffs claim the repairs made by United Rentals were themselves negligent because they triggered an obligation for United Rentals to discover the design defect and warn plaintiff about it. This theory, however, collapses into the same failure-to-warn claim rejected above. The Missouri Supreme Court came to this general understanding in *Johnson*. Relying on overlapping parts of the Restatement, the court explain:

> Section 403 provides, "One who as an independent contractor makes, rebuilds, or repairs a chattel for another and turns it over to the other, knowing or having reason to know that ***his work*** has made it dangerous for the use for which it is turned over, is subject to the same liability as if he supplied the chattel." RESTATEMENT (SECOND) OF TORTS § 403 (1965).

> Comment b to section 403 makes clear that this liability applies "only where the contractor knows or has reason to know that ***the work which he has done*** in making, rebuilding, or ***repairing the chattel*** has made it unsafe for use." *Id*. Liability under section 403, like under section 388, thereby is limited to risks created by the repair work done by defendant and does not create an obligation to warn about unrelated defects."

*Johnson*, 523 S.W.3d at 461-462 (emphasis in original).

## IV. CONCLUSION

Having concluded that plaintiffs' asserted claims against United Rentals fail as a matter of law, this Court will grant summary judgment in United Rentals' favor.

Accordingly,

**IT IS HEREBY ORDERED** that defendant United Rentals (North America), Inc.'s motion for summary judgment (#28) is **GRANTED**.

So ordered this 18th day of July 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE